*Walter C. Ong, Hurlbut & Hurlbut,* for plaintiff in error.

*Goulder, Holding & Masten,* for Pope Motor Car Company.

*Hoyt, Dustin & Kelley,* for Baker Vehicle Company.

---

## ACTION BY EXECUTRIX ON NOTES.

[Circuit Court of Cuyahoga County.]

### ELDORAS S. TUCKER v. ALMA S. SHERMAN.

Decided, December 21, 1906.

*Pleading—Amendment—Substitution of Plaintiff as Executrix for Plaintiff as an Individual—Promissory Notes—Action on—Ownership of—Defenses—Charge of Court—Written Charges which Need not be Sent to the Jury Room—Section 5190.*

1. The requirement of the code that amendments shall be allowed at all stages of a case when in furtherance of justice, is sufficient authority for permitting a plaintiff who has sued in her individual capacity to substitute herself as executrix.

2. Where an executrix, suing on notes, alleges that they were the property of her testator long before they became due, and were his property at the time of his death, and the defendant denies ownership, the production of the notes at the trial is not prejudicial to the defendant, nor is it error to admit them in evidence.

3. The placing of an endorsement upon a note by the payee after the death of the owner in no way affects the question of ownership; and a charge of court to the effect that the possession of the notes, either actual or constructive, by the testator affords a presumption of ownership, is not prejudicial where there is no denial of ownership by the testator at the time of his death, and is not erroneous, although not justified by anything in the evidence.

4. It is not error for a court to refuse to send instructions to the jury which were not requested until after argument.

MARVIN, J.; WILDMAN, J., and HENRY, J., concur.

Error to the court of common pleas.

The defendant in error brought suit against the plaintiff in error upon two promissory notes, setting out each one as a cause of action against the defendant below. This suit was brought by her in her individual personal capacity. The notes sued upon are alike, except that one is payable two years after its date and the other three years after its date. The first note reads:

"1,500.00                    "PAINESVILLE, OHIO, March 18, 1896.

"Two years after date I promise to pay, to the order of U. C. Walton, Fifteen Hundred Dollars, at Boughton, Ford & Co., Burton, Ohio, with interest at 6 per cent. annually, value received.

"Secured by mortgage.                    E. S. TUCKER."

The following is written on the back of said note:

"Pay to Alma S. Sherman or order.
                                        "U. C. WELTON."

There are no credits endorsed on said note.

The other note, as has already been said, is the same, except that the time of payment is three years from date instead of two years from date.

This suit was begun on the 10th day of June, 1902. On the 31st day of December, 1904, on motion of the plaintiff, she was permitted by the court to amend her petition, substituting herself as executrix of the will of Roger Sherman, deceased, for herself in her personal capacity, and alleging that by reason of the facts set out in said amended petition she was the owner of said notes as such executrix. This amendment was made over the objection of the defendant, but an exception was taken to the order allowing the amendment. The plaintiff was also allowed to amend by making a new party defendant in the case, but nothing that was done by the court in reference to such new party in any wise affects any of the parties now before this court, and nothing need be said as to that amendment. As to the amendment substituting herself as executrix, an exception was taken.

We think that the action of the court in that regard was fully justified by the case of *Becker* v. *Walworth*, 45 O. S., 169. On pages 174 and 175 where this language is used: (It should

be said, however, before reading this, that a suit was brought against a person as in his personal capacity and that thereafter application was made for leave to amend, letting the suit stand as against the defendant as executor.)

"The filing of the first petition in the case is claimed to contain an election. In the caption to that pleading the defendant was described as 'Michael Becker, executor of the estate of Abram Rafenstein, deceased,' and in the body the allegations purported to charge him as executor. Before answer, on leave, the petition was amended so as to charge him personally. This leave was granted without prejudice to defendant's right to insist that plaintiff had elected to make her claim against him as executor, and not personally.

"Our practice encourages great liberality in pleading, and the code enjoins the duty of allowing amendments at all stages of a case in furtherance of justice. The commencement of the action by the filing of an original petition against defendant as executor worked no prejudice to him, and it is not easy to see why such commencement of the action should preclude amendment on the part of the plaintiff in order to charge him personally. It was no more than the discontinuing of one action and the commencement of another, and this may have been induced by the discovery that the one would prove wholly fruitless."

That reasoning applied to this case would justify the court in permitting the amendment to be made, and there was no error in that regard.

It is further claimed that the court erred in admitting the notes in evidence. I read certain allegations in the amended petition and certain parts of the answer. The first cause of action is upon the note due in two years, and the second upon the note due in three years. In each case this language is used:

"There are no credits endorsed on said note; said note was duly indorsed in blank by said U. C. Welton, and sold and delivered to said Roger Sherman by him long before its maturity, and said Roger Sherman was the owner and holder of said note at the time of his death."

In answer to this the defendant sets out that there was a fraud perpetrated upon him in the procuring of these notes; that he was induced by certain fraudulent representations and conduct on the part of the payee of the notes to give the notes

in part payment of the purchase price of certain lots near the city of Chicago; that the lots were not the ones shown to the defendant at the time he made the purchase; that they were not such lots at all as they were represented to be, and that Sherman (the deceased) was a party to that fraud; but the only denial contained in this answer is in these words:

"This defendant denies that said notes are owned by the plaintiff, and he says that if and so far as said plaintiff may on the trial hereof produce evidence of her ownership, she took whatever title she has or shall show with notice of this defendant's said claim and defenses to said notes, and after the same each became due by the terms thereof, and her said testator at the time he received said notes and at the time of the giving of the same was interested with said Welton in said transaction and in said lots, and in said transaction the said Welton acted in whole or in part as agent for said Roger Sherman, deceased, who was then in full life."

The plaintiff said she owned the notes as executrix. The defendant denied it. Plaintiff said she owned the notes, because they were duly endorsed in blank by U. C. Welton and delivered by said Roger Sherman long before maturity, and said Roger Sherman was the owner and holder of said notes at the time of his death. That is not denied. It is urged that it is a sufficient denial of all the facts to deny the ownership in that way, and in a brief submitted to-day attention is called to 66 O. S., 121, and especially to page 135; 15 O. S., 225, and the language of the court on page 250; 58 Fed. Rep., 681; 13 O. S., 228. In each of these cases it is held that it is a denial of the right of the plaintiff to recover when one denies the ownership of a note sued upon. He need not set up the facts upon which he relies as showing that the plaintiff is not the owner. But here the plaintiff has set out the facts upon which she relies to show that she is the owner, to-wit, that the notes were notes of her testator long before they were due, and that they were endorsed in blank and delivered to him and that they were his property at the time of his death. So that under the pleadings it was not necessary for the plaintiff to show that the notes were sold to the testator and delivered to him in his lifetime and that they belonged to him at the time of his death, but she offered the notes

in evidence, and it is said that there was error in admitting them in evidence. She had testified that the notes were in her possession. She testified where she found them—one in the safe with her husband's papers, and the other in a bank at Titusville, Pa. There is nothing to indicate how it came to be there. The allegation of the petition is that it belonged to her husband when he died. Now, when she produced the notes in evidence it is a sufficient showing, at least it tended to show that she as executrix was the owner of the notes. Indeed, I think it was enough that they were the property of the testator when he died, and that she had them as the executrix of his will, and there need be no other showing about it. It certainly could not prejudice the defendant below that she produced the notes as tending to show her ownership of them as executrix.

In the brief of counsel for plaintiff in error it is urged that there was no evidence that the name of the payee on the back of the note was his genuine signature. It was not necessary to show that that was a genuine endorsement, because it was not denied. The plaintiff testified to the fact that the endorsement as it now appears upon the notes was not upon the note at the time of the death of her husband, but that the only endorsement upon the note at that time was simply the name of the payee, and that the words appearing above that name now on the notes, "Pay to Alma S. Sherman or order" were written after the death of Roger Sherman. "I hereby waive demand of notice and protest. U. C. Welton." It appears that these endorsements were made after the death of Roger Sherman. Remembering that the notes belonged to Roger Sherman when he died, no action of the payee could take away the ownership of these notes in the representative of Roger Sherman. For as they did not belong to Welton, he could not make any endorsement after the death of Sherman which could change the ownership.

It is said, however, that there was error in the charge of the court in these words:

"It is the claim of the plaintiff that after the death of Roger Sherman these notes were found among his papers, or were found under such circumstances or in such place as indicated that they were under his control at the time of his death, and in his possession, actual or constructive, and it is also claimed by

plaintiff that at that time the only endorsement on the back of the note was the name U. C. Welton. Now, if that be true, if these notes were found in his possession, actual or constructive, and by constructive I mean that they were found where he had placed them for some purpose without intending to part with the ownership of them, the presumption, I say, would be that they belonged to him at the time of his death.''

There was nothing in the evidence that could justify this language. But there being no denial of his ownership at the time of his death, there was no prejudice in that. The same may be said as to other language of the court in regard to establishing the ownership of the notes. It was admitted that they belonged to Sherman when he died.

Again, complaint is made of the action of the court in refusing to send certain written instructions to the jury. The facts, as shown by the bill, are that after argument the court said that plaintiff had submitted twenty-one requests; that the court declined to give these requests except as given in the general charge, and then the court said, as appears on page 27 of the bill:

''The requests of the defendant to charge, the court will give, all except the 8th; but I have great doubt, Judge Bentley, whether I ought to give the eighth one—the last one; I don't know whether it would be fair to the other party to give that request in this case.

''MR. BENTLEY: I think fairness to the defendant, Tucker, requires something in the nature of that request, or that something of an equivalent nature should be given.

''THE COURT: I will give it.''

Then follow two requests. The language is:

''1. The defendant, Tucker, moves the court to dismiss this action upon the pleadings herein.

''This request is refused.

''2. In case said first request is refused, said defendant, Tucker, requests the court to direct the jury to return a verdict for the defendant, Tucker.

''This request is also refused.

''Then comes the charge proper to the jury.''

This is followed by numbered paragraphs, beginning with No. 3 and ending with No. 8, and then follows what is further said to the jury.

It is nowhere said that the numbered paragraphs were in writing, and only by implication is it said that they were instructions requested by any one. We think it fair to treat them as being in writing and as requested by the defendant. At the close of the charge the bill shows the following:

"Counsel for defendant, Tucker, asks that the requests to charge that were given go with the jury on their retirement. Said request was refused."

As already said, the implication is that these were in writing, and we treat them as though they were. It can not be assumed that these requests were made before the argument. We must treat them as being made at the conclusion of the argument.

This brings us to the construction of Section 5190, Revised Statutes, the 5th and 7th subdivisions of which read:

"5. When the evidence is concluded, either party may present written instructions to the court on matters of law, and request the same to be given to the jury, which instructions shall be given or refused by the court before the argument to the jury is commenced.

"7. The court, after the argument is concluded, shall, before proceeding with other business, charge the jury; any charge shall be reduced to writing by the court, if either party, before the argument to the jury is commenced, request it; a charge or instruction, when so written or given, shall not be orally qualified or modified in any manner to the jury by the court; and all written charges and instructions shall be taken by the jurors in their retirement, and returned with their verdict into court, and shall remain on file with the papers of the case."

These subdivisions read substantially as the 5th and 7th subdivisions of old Section 33 of the criminal code, found in 74 Ohio Laws, page 349. There is no difference in the reading in so far as the written instructions to the jury are concerned.

In the case of *Griffin* v. *The State*, 34 O. S., 299, the second clause of the syllabus reads:

"Under Section 33, Title 2, Chapter 6 of the penal code (74 Ohio L., 349), special instructions given to the jury in writing, after argument, are not required to be taken by the jury, in their retirement, where the principal charge is not required to be in writing."

The opinion of the court bears that out.   On page 303 the court say:

"The only charges that the court is required to reduce to writing, under either clause of the section, are such charges or instructions as it is requested to reduce to writing before the argument is commenced; and it is too late to make the request after the argument is commenced."

To the same effect are the cases in 10 C. C., 153-4; 9 C. C., 691. In each case the opinion was delivered by Judge King, and it is said that the requests which must go to the jury are those mentioned in subdivision 5, to-wit, requests to charge before argument. Entirely consistent with these authorities are the cases in 68 O. S., 543, and 40 O. S., 430.

Following the construction given to these several statutes, we find no error in the action of the court in this regard, and no error in the record of the case.

*Judgment affirmed.*

*C. S. Bentley,* for plaintiff in error.

*N. H. Bostwick,* for defendant in error.

---

## LIABILITY FOR INJURY TO MOTORMAN IN A COLLISION.

[Circuit Court of Hamilton County.]

The Interurban Railway & Terminal Company v. Frederick J. Treuheit.

Decided, December 29, 1906.

*Electric Railways—Motorman Injured in Collision—Negligence of Company—Contributory Negligence of Motorman—Rule of Prudence as Applied to One Placed in Peril—Operating Rules of Company Construed—"Bell" Signals to Start—Control of Car by Conductor "Between Terminal Stations"—Charge of Court.*

1. The motorman of an electric car is guilty of contributory negligence if, by the exercise of ordinary care and prudence, he ought to have discovered the presence of another car on the same track in time to have avoided the collision in which he was injured.

2. The rule of law that one who is placed in a situation of danger without his fault is not to be held to the exercise of the same care